Thank you. Please be seated. And we're now to the final argument of today and of this panel for this week. So with that, we'll get right to it. Case number 20-30689, NRA Deepwater Horizon, Ward v. BP, and we'll begin with Mr. Turner. Hey, please support. My name is Paul Dominick. I represent eight individuals who for nearly ten years have timely met every docket management deadline but have now had their cases dismissed with prejudice and without any legal justification or explanation. The Fifth Circuit standard of review is very specific and is not an issue in this case. Although there is special deference given to a district court managing an MDL and docket management orders are reviewed for abuse of discretion, the Fifth Circuit will affirm dismissals with prejudice only on the showing of a clear record of delay or contumacious conduct by the plaintiff and where lesser sanctions would not serve the best interest of justice. In this case, there is no record of delay. The plaintiffs in this appeal never once, not once, missed a deadline. All responses were timely filed. Any amended responses in this case which were brought up by counsel to BP were in an effort to satisfy the BP attorney's complaints about the original responses. But counsel, those original responses were woefully inadequate and contradictory. The supplemental responses were contradictory from the prior responses. The responses and explanations after that contradicted some of the early responses. A party can meet every deadline, but if they substantively wholly fail to comply with interrogatory responses and those kinds of things, how is dismissal, even with prejudice, not an appropriate sanction at some point? Well, I know that there was a statement mentioned by BP's counsel at the very beginning of the hearing that said that all cases were dismissed. It only says the responses failed to comply with PTO 68, but it never said how they failed to comply. The quotes that were given by opposing counsel that the answers were a mess and they were contradictory was before I made my argument at the show cause hearing and pointed out to the court how the answers were consistent in essence that the clients suffered an immediate injury and reported that, but they did not recall the date of the first saw a physician. They did not recall when they had the first diagnosis. But counsel, they first said they didn't seek treatment. Yes. Then they said they couldn't recall because it was 8, 9, 10 years ago. Then they said they couldn't get their records at some point because they had just sought treatment and at some point some of those stories or responses are demonstrably wrong. So, I mean, they're kind of, how am I failing to square the circle or please help me do that because I want to give these plaintiffs their due day in court, but at some stage of the game, especially if you're going to allege medical injury, personal injury, harm, physical harm, at some stage you've got to get your story straight and you've got to be able to substantiate it, right? Well, I think that's correct at some point and I think the judge later in the transcript and I can point to the section mentioned that at the appropriate time and place that BP could bring up those issues. I think the judge was referring to a summary judgment hearing. There was no . . . this was a docket management issue. The judge was not making a ruling on the merits of the case. The judge was not making a ruling as to whether the responses to PTO 68 were . . . failed to create a prima facie case. In fact, the judge made no rulings and made no findings. So, we don't really know what was in the judgment. . . . . One of the problems as I see it is I can understand, you know, if you got a car wreck this year and you were asked to provide medical records from some prior car wreck 20 years ago, how that might be hard to do. But here this notion that they didn't really know about their medical . . . when from day one everybody knew there was litigation against BP, okay, and from day one, close to day one, there was litigation against BP and they knew they were plaintiffs in that case, why were they not keeping track of their medical records? Because they are plaintiffs or were fixing to be plaintiffs from, if not day one, close to day one. . . Well, let me say this. First, I don't think that's the standard as far as the court is concerned. Secondly, I'd like to point to what the judge said at the rule of show cause hearing. In addition to saying the questions could have been more artfully worded, you can see in the transcript, which is the record on appeal page 6901 in response to the BP attorney's arguments, the court said this, well, I will tell you how I interpret this for whatever it's worth. I'm interpreting this type of response as saying someone claims they had symptoms soon after the alleged exposure. They never went to a doctor, never sought treatment, but more recently they have gone to a doctor or a hospital for some medical condition that they allege persists, but we don't know which condition that is because the form doesn't ask them to identify it. That's where we are with this. I think the judge recognized that the way the questions were set forth, it was just a graph. When did you first go to . . . when did you first see a doctor? The date. What was the date you first saw a doctor? Well, these people didn't see a doctor. A lot of them self-medicated initially. How could they say they were waiting for medical records? It's not just inconsistent. It denies the reality of what apparently the information was being sought. There was no requirement for us to produce medical records other than records in our possession. But if they didn't go to the doctors, how could you then say that you're waiting for medical records? Well, we had numerous clients and we didn't order all the medical records for every client immediately. The court . . . these cases have stayed for ten years. They hadn't even been in discovery. We didn't know what was going to happen. Even the judge mentioned possibility of settlement negotiations. We didn't know and had no obligation to go out and seek medical records. But what we did do . . . But you had an obligation to support your claim if you were going to assert a claim of physical disability. We certainly did. We have an obligation to do that when the stay is lifted and the court issues a scheduling order and says, let's go forward with discovery. If there's a motion for summary judgment, we have an obligation to support our claim. This is what the judge has done. Number one, we don't know what he's done because he didn't say. He didn't dismiss it because of this, because we couldn't support a claim. That's the judgment on the merits. That's not the function of a docket management MDL judge. That's not the kind of special deference that should be given to the judge. But if you think that these answers are inconsistent and messy, then can't the district judge . . . couldn't he have concluded that himself? You would think he would have said something about it. Well . . . He didn't say anything. There's a pile of stuff in this case. He's been pretty short-statemented. While, of course, we could all sitting here now, years later, can always say, well, he could have said more. I don't know that that's dispositive in a case like this. Well, I will point out that in every other case that I saw that came before this court involving this same issue, and this is not a new ballgame for this kind of cases as far as dismissals with prejudice and appeals, the court always gave the reason, always. It might have been one sentence, missed the deadline, this client failed to respond at all, but he always gave a reason. There's never a reason given. Counsel, we can . . . I mean, you said there's never a reason given. There's a show cause hearing as to why the plaintiff failed to comply with PTO 68 or what led to the eventual dismissal, right? Well, and I felt like if you look at the record, we did show cause. Well, but I mean, you say that the district court doesn't state any reason, but the reason seems pretty apparent to me, and I'm not the sharpest knife in the drawer, but I mean, if you're going to have a show cause hearing on a failure to comply with PTO 68, much like the process that was followed for prior PTOs where plaintiffs were eventually dismissed with prejudice, I mean, I can make that inference. I can easily make the conclusion as to why you were there and why the district court dismissed the case. It was for failure to comply. As Judge Haynes said just moments ago, I mean, if we can see the inconsistencies in the responses that the plaintiffs were giving, I mean, how many do-overs do you get before you have to start substantiating that you've even got a claim to begin with? Let me say this. The inconsistent, supposedly inconsistent answers, that was responded to, and the judge seemed to understand that at the hearing. Why are we looking behind to see what the judge's comments are about that? That's not the standard in this case. It has to be a clear record of delay in contemnation's conduct. I didn't even know what contemnation meant before I got into this case, but thankfully, the Fifth Circuit described it as a willful and intentional disobedience of a court order. There's none of that here. There's none of that in this case. These clients did their best to respond truthfully. I cannot recall as a truthful answer, that is a response. That's not a response that justifies a case. The judge's opinions before the judge made this ruling said, this is the standard, a clear record of delay in contemnation's conduct. Knowing that, why wouldn't the judge make a finding? Your lower court judge knows the standard, you set it forth, and the judge doesn't even address it in the finding. You can say, well, he's got a lot of cases, but these clients only have one case. They have their one case, and it's being dismissed with prejudice. Counsel, they have their one case. Why in the world couldn't they get the medical records over a period of what, seven months or a couple of years since they gave their statement of claim that was a prior PTO? There was no obligation by this court for us to go out and secure every medical record for every client. There's no PTO that says we have . . . Did they secure any? Excuse me? Did they secure any? Yes, they did secure. We secured thousands of pages of medical records and submitted, and even some of these clients submitted medical records. Now, I'm talking about just these clients. They're the only ones we're talking about. Some of these clients did submit medical records, but there wasn't enough to satisfy BP because they didn't like the answers to the questions. It was BP that had the right to point out to the court, we don't think these are compliant. Then we had the argument, the court found these not to be compliant, and the PTO, for whatever reason, knew what the standard was for the Fifth Circuit, and yet went ahead and dismissed the cases with prejudice, with no reasoning, and that's . . . Well, you had a warning. Every time he sent out a PTO, there was a warning that if plaintiffs failed to comply with a PTO, in other words, answer the questions, their claim should be dismissed, and this went on for quite a while. There were several PTOs. It did. It went on for nearly 10 years. I could see it coming. Yeah. See, it went on for 10 years. We responded . . . PTO 66 was in-depth as to what had to be responded to. That's not the issue here. It's not. We were found to be compliant with that. These clients were found to be compliant with PTO 66, and all the other PTOs, never, never did they miss a deadline, never. Even in PTO 68, a deadline was never missed, and yet the court, without explanation, dismisses the case with prejudice. That just doesn't meet the standard of this court of a clear record of delay or contumacious conduct. There's no prejudice to BP if these cases are allowed to go forward on the merits. Well, what is the prejudice that they don't know the medical condition or even what's being asserted? You say, I can't remember. You can't remember going to the doctor? Then they're going to go try the case, and they don't know what doctor's going to be called, what medical records are going to be presented? That's prejudicial. Discovery hasn't started in these cases. The cases are stayed. Discovery hasn't started. They've got a right to get all of that information. Plus, each of these clients personally signed the medical release form, and whatever doctors were listed, BP's got the right to go without a motion and get all of the medical records, to get all of the records. They have that ability and that information as a result of the responses to PTO 68. It really goes back to the point, if this is why the judge dismissed the case, it was a dismissal on the merits of the case. It wasn't a docket management dismissal. It was a dismissal on the merits that the judge felt like these clients could not submit a case that would survive summary judgment. That's not what this is all about. There were lesser sanctions that I think the judge could have issued in this case. That's another part of the standard for this court. What are they? Well, the judge had mentioned in response . . . I see my time is up. You can quickly answer. Okay. In response to another plaintiff that had the same issue, frankly, at the rule of show cause hearing, the judge said, well, if you're inconsistent answers with PTO 66, the earlier PTO in PTO 68, then I'm going to say that you can't, unless you show some good reason, that you can't assert additional conditions in your case going forward. That was a lesser sanction than dismissing with prejudice. The judge pointed that out, that that was a lesser sanction that he felt like under his authority could require because you have inconsistent answers. It wasn't a complete dismissal with prejudice without explanation. Okay. Thank you. Time for rebuttal. Thank you. Thank you very much. Thank you, Your Honor. And may it please the court, George Hicks for the BP appellees. Judge Barbier is overseeing an MDL that this court has called epic, gargantuan, and extraordinarily complex. To move hundreds of remaining cases closer to trial, Judge Barbier issued PTO 68, which required plaintiffs to provide important information about their claims. In issuing and enforcing PTO 68, Judge Barbier did everything he reasonably should have done. He gave plaintiffs months to comply and provide the necessary information and granted extensions when requested. He issued a show cause order that identified problems with certain plaintiff submissions and gave those plaintiffs another chance to comply along with a warning of dismissal with prejudice or failure to comply. He held a lengthy hearing, and he ultimately kept dozens of plaintiffs in the MDL over BP's objections. These eight appellants, however, alone among hundreds of plaintiffs, provided PTO 68 submissions that were non-responsive, ever-shifting, internally contradictory, and inconsistent with their earlier PTO 66 responses. Their submissions were, as Judge Barbier put it, a mess and impossible to make sense of. Furthermore . . .  I'm going to turn specifically to Counsel Opposite, who says, we're not in discovery yet. And so, these plaintiffs are losing their claims. They're going to lose their day in court based on docket management techniques. So, if you could respond to that. I mean, how much are they required to provide at this point? I mean, are we in discovery or are we not in discovery? Well, Your Honor, this was like several of the previous PTOs. This was a case management order that Judge Barbier issued and enforced precisely to get these hundreds of cases ready for prosecution and severance and remand to the individual district courts where discovery and trial would take place. So, the entire purpose of these PTOs, PTO 68, but much like all the previous ones, which this court has consistently called a case management order, not a discovery order, was to get this necessary information, really kind of basic information, from the plaintiffs so that, number one, the district court could be sure that these were ready to be remanded back to the district courts or the MDL court back to the district courts, but also to allow BP to start preparing its defenses to these hundreds of cases. And that's exactly what happened in this case and why these particular plaintiff submissions were so problematic. Number one, they didn't provide anything responsive or consistent or anything that really gave BP or the district court, frankly, an idea of how to prepare these cases for severance and remand or for BP to prepare defenses. And the idea that, well, it could all just be addressed in discovery on remand to the district court, I mean, I think that's simply sort of an inefficient decision in all of these PTOs to use a mechanism to get these cases ready and to have the information that he needed and that BP needed for these cases. And I think this is a perfect example because shortly after PTO 68 was finally wrapped up and enforced, Judge Barbier did issue the severance order remanding all of these hundreds of cases that had the sufficient information that he thought was sufficient for the district courts to be able to move forward and the parties to be able to move forward. He issued that remand order and they are now back in the individual district courts where, so there is no more stay at discovery. The district courts have now lifted that stay. Discovery is happening. And in fact, the information that was provided by every other plaintiff in PTO 68 has actually been used in those remanded cases. So they have been used to facilitate third-party discovery because every other plaintiff provided the name of the physicians who are currently treating them, provided the diagnosis dates, provided the dates of first symptoms unlike these plaintiffs, and also some of that information from PTO 68 has been used as initial disclosures so that, again, those district courts who are dealing with hundreds of cases don't have to deal with sort of that additional procedural requirements of disclosures, et cetera. So it actually is very important that the plaintiffs had to provide at least some sort of responsive information. And to be clear, that's the real problem with these submissions, as Judge Barbier found and stated at the hearing, which it's not simply that there's no medical records. There are several parts of PTO 68. One part of PTO 68 was to provide the medical records in your possession. Another part was to complete this form that asked for some fairly basic information when you're alleging a personal injury claim and provide that information to the court and to BP. And that's where the real problem is here because, as some of you have noted, the first round said did not seek treatment. And then when BP said, you know, this seems to be inconsistent with your later statements that you're still currently seeking treatment, they came back with an amended form. And then that just said, I'm sorry, the first part just said N.A. And then BP said during the meet and confer, well, this doesn't make a lot of sense when you later say you're seeking treatment. So then they provided an amended form that said did not seek treatment, but it still had the inconsistency, internal inconsistency. And so that's when the show cause order came out pointing out that problem among others. And then they changed it again in their second amended form to say plaintiff does not recall seeking medical records. So that's really just the medical records here is sort of a red herring because they used the medical records as sort of a placeholder or a dodge instead of actually providing the information that was required. Every time they were pressed to provide actually responsive information, they kept moving further and further away and giving increasingly more and more vague answers. And I think that Judge Barbier rightfully, you know, he said during the hearing, which I want to emphasize was the only time he's ever held a hearing before enforcing one of these PTOs. So arguably these plaintiffs got more consideration or process, if you want to call it that, than any other plaintiffs. But he said during the hearing, I've looked at all these, and he called it, rightfully, all this tedious stuff. So he had looked at all of these forms and he could tell by looking at the succession of these forms that they weren't being responsive, that they weren't providing the necessary information, and that, you know, at the end of the day they just weren't being substantively compliant with his order. What of counsel's point that the district court didn't state any reasons for dismissing with prejudice for doing what it did? Sure. Several responses, Judge Wilson. First of all, this court has never required an explanation in any of these cases involving any of the PTOs. It has never required findings of clear record of delay or consummations conduct. Counsel has never cited any case in which this court has ever done that. And this court has affirmed dismissals with prejudice in plenty of situations where that was not the case. And I think there's a reason for that, because this court, you know, the Supreme Court has said that when the court can assume that a district court based its unexplained discretionary decision on the ground the prevailing party presented. And that's in the Dart Basin case from the Supreme Court, which, again, the plaintiffs have no response for in their reply. And that's exactly what we have here. There was copious briefing before dismissal. There was a hearing, again, which you have not seen in any of the other cases. But, I mean, his order does say the following eight plaintiffs have not complied with PTO 68 and their claim for dismissal with prejudice. Why isn't that a reason? I mean, that's a reason. And when you combine that with what he said at the hearing, I mean, you know, it was a lengthy hearing, and he was addressing a number of different plaintiffs, but he spent a good portion of time on these eight plaintiffs. And I think it bears emphasizing that these were the only eight plaintiffs out of hundreds who Judge Barbier dismissed with prejudice for failure to substantively comply. These are the only eight plaintiffs whose submissions he deemed so deficient and nonresponsive that dismissal with prejudice was an appropriate sanction. And to that point, I want to respond to a couple points that my friend across the aisle made. You know, the idea that there was a lesser sanction available, I mean, that's, I think, refuted by this Court's previous cases dealing with these PTOs where it held in Barrera that an explicit warning is a lesser sanction. They had an explicit warning here in the show cause. The Barrera and the Alvarado decisions both said that lesser sanctions would delay the district court's efforts to adjudicate the MDL expeditiously. And I think when you have a situation here where the plaintiffs had multiple opportunities to submit a substantively compliant submission form, and not only did they not do that, but each time they did it, it got progressively vague and nonresponsive. I think that at a certain point, an MDL judge who was trying to process this, not just sort of to move him forward in the MDL, but he knew that the next step is to distribute these to all the district courts who now get to deal with all of these cases. And he did not want to just give them cases that were sort of not in any state of preparation for them. And so, you know, at a certain point, yes, the dismissal with prejudice is the sanction that an MDL court needs to be able to wield in certain situations. And when it does so, as this court has said, we review with a deferential standard of review. I also want to address the idea that there's no prejudice here, as my friend has also said. I don't think that's correct at all. You know, number one, this court has said that there doesn't even need to be prejudice. That's considered one of the aggravating factors. But this court has said over and over in Barrera, Alvarado, Graham, that aggravating factors are unnecessary. But there certainly is prejudice to BP here. Again, the point of PTO 68 was to help the parties, both sides, obtain information to prepare for those severed and remanded cases to move forward and go to trial, and for BP to start preparing its defenses to 800 or so individual cases. And BP upheld its end of the bargain. It turned over 110,000 documents, timely did so, and it got from almost all the other plaintiffs that the information that it needed to start working up these cases once they were remanded. But from these eight plaintiffs, they just did not get helpful or consistent or responsive facts about their injuries or their claims. And that prejudices BP's ability to prepare a defense. My friend also referred to the Judge Barbier made a comment during the hearing that the form could have been more artfully worded. The district court was referring to one aspect of the form that really isn't even kind of implicated here. Judge Barbier was talking about how the chart says list your conditions and provide information about them, and then the next page of the form says, are you still seeking treatment for the condition? Condition, conditions. Yeah, but that's not really the problem with these. The problem here is in the chart. I mean, the conditions, they just didn't fill them in. I mean, and if you want, and if you haven't had a chance to go through all this, quote, tedious stuff. Did anybody object or ask for clarification? Nobody did, and in fact, I think this form was prepared in consultation between BP and the Plaintiff's Steering Committee, and it was issued by Judge Barbier. So, you know, and even he apparently didn't think it was that inartfully worded as to excuse these plaintiffs. Maybe some of the other plaintiffs, the dozens or so he kept in, he might have thought maybe that made a difference. But it's almost like, you know, it's like a harmless error thing here. But I don't even think there was any, you know, real, you know, inartfully worded language to begin with. But again, if you were to look at, you know, if you haven't looked through some of these, you can look through just a couple rather than through the pages and pages of the record. But, for example, if you look at Plaintiff Roberts, her first form is at record 10-871. Her amended form is at 10-875. And her second amended form is at 10-879. And if you look at these, the problem is not that there's some sort of confusion between, you know, the first chart and then the second question. And so conditions could kind of be confusing with condition. The problem is that if you look at the chart, there's just nothing in there. And it starts with not applicable. And then the amended one goes to did not seek treatment. And then the second amended goes to does not recall counsels awaiting medical records for more exact response. And on that last point about awaiting medical records, you know, again, this has never been about sort of disclosing or producing the medical records. It's about the lack of information in here. But this form was submitted, even the second amended form, was submitted over a year ago at this point. And unlike the plaintiffs, the handful of plaintiffs, whose dismissals with prejudice this court has reversed, which would be the D'Amico plaintiffs in the Graham case and the Lanier plaintiffs in the Alvarado case, you know, those plaintiffs had – they submitted substantively sufficient information. It just happened to be a little untimely. And they provided corroboration and documentation for their untimeliness. They had affidavits. They had declarations. And they got their stuff in. It happened to be a few weeks late. And this court held in both of those cases that that does not warrant dismissal of prejudice. Here, we don't have any documentation or corroboration of efforts to get the medical records. They just sort of said it in the form. They didn't provide any affidavits, any declarations. And they still haven't provided the substantively sufficient information. It's been over a year, but there hasn't been any updating or any efforts to provide new forms with that information that they were supposedly waiting to get from the medical records. There's been nothing like that. So this is a materially different case from the two cases where this court has reversed dismissals with prejudice. And again, I don't see anything in the plaintiff's reply to be taking issue with that or frankly to be taking issue with the fact that this case is a heck of a lot more like the Barrera case or the Iams plaintiff in Alvarado where you had, for example, in the Barrera case, the plaintiffs had, quote, a number of opportunities to comply, a number of opportunities to explain why they could not do so, and a number of opportunities to show documentation of their attorney's efforts. Well, here, these plaintiffs had a number of opportunities to comply, but they never provided any explanation or documentation of why they couldn't do so, including as to why they had to wait on the medical records to get the basic information that they were supposed to be providing. So we think this case falls pretty close to Barrera. It falls very close to Iams in the Alvarado case who simply didn't provide anything. And when you provide a submission that really doesn't give the basic information, again, what is the MDL court supposed to do with that? And what is BP supposed to do with that? And I think that's why, at the end of the day, these eight plaintiffs, alone among the hundreds, were dismissed with prejudice, and rightfully so. Okay. Do you have any other argument? Let me ask you one off-the-record question. You said that the case management orders, when they're remanded to the district judge, are very helpful for evaluating needed discovery for trial. But also, wouldn't there be an exploration of settlement opportunities? I'm sorry, could you say your question one more time? You said that these pretrial orders would be helpful to the district court when the cases are remanded for trial. Wouldn't they also be evaluated and valuable for settlement opportunities? Absolutely, I think so. I mean, the more information you have about a plaintiff's claim, the more you can discuss what to do about it, and you'll reach some sort of amicable resolution, not only that helps the plaintiff and BP, but also relieves a district court of one of the, perhaps, dozens of cases that it might have to be dealing with on remand. Or a bazillion more appeals. That is also true. Okay. Well, thank you very much. Have you concluded? I did. Okay. Thank you, Your Honor. I appreciate your argument. Thank you. And we will hear the rebuttal. Thank you. Just a few points. It was clear in the transcript that the judge said this was a bad form, bad questions. These questions were designed by BP. But did anybody ever ask for clarification? Did anybody ask for clarification? Yeah, was anybody confused? Did anybody raise a point with BP about, I can't fill out this form, I can't get you information because . . . No, because we did fill it out, and we gave them the information. I can't recall is an answer. That's an appropriate answer. And when they say they don't have information to prepare a defense, I mean, any lawyer worth his salt, her salt, can tell you, I can't recall. Yeah, I can use that when I'm dealing with a client. Oh, you can't recall and you can recall now? Oh, you have contradictory . . . But it wasn't just that. It was the inconsistencies among the amended, you know, what he went through with the one party example, the Roberts example. So if you're going to say, well, I can't recall, I do recall, I'm getting the medical records, I don't have the medical records, I mean . . . That happens in litigation all the time. It happens in litigation all the time. Okay, but at some point, you don't have to put up with it. At some point. And that's the point at which Judge Barbier was in this case. Well, that's not what he said. This is what he said, record on appeal. This was his last statement about this in the record on appeal, since we have to go to the record on appeal, since he didn't say anything about why he dismissed the cases. He did say, I read what he said. Yeah. I read the . . . What he said is he dismissed it because he didn't comply with PTO 68. That's not a reason. That's like saying, well, I dismissed your case because you didn't comply with the law. I mean, you have to give a reason. How is an appellate court going to deal . . . This is more specific than the law. It's PTO 68. But how did we . . . That's what you all have appealed. You seem to know what you needed to argue because you've made those arguments. And part of the argument is he didn't say how we failed to comply. What he had to say, I think, based on clear precedent from this court, is, hey, and this is a clear record of delay and contumacious conduct, and it's not . . . Here's what . . . Let me read real quickly what he said, and I'm going to . . . I'll shorten it up. But this is a record on appeal at page 6914. The court said, all right, let me just say this. I will make a general observation about all of these. We're not going to be able to sit here and parse these one by one, item by item, line by line. I'm just not going to do that. I will just make a general statement. If the plaintiffs are required to produce something, you know, disclose something and didn't disclose it, and now they are trying to add to it, I think those are issues that BP will be able to bring up in the appropriate forum at the appropriate time. And then later on he said, I don't know that these are bases to dismiss these claimants. That was the last word he had, bring it up at the appropriate time, at the appropriate forum. But he kept a lot of plaintiffs in the mix in that order. He did. He did. And BP tried to throw out over 300 and something cases. Okay. Yes. So a lot of the plaintiffs won. These eight didn't. And here we are. So, he only had eight to deal with that he wanted to dismiss with prejudice. Why couldn't he take the time to give a one-sentence reason? Why didn't he do that? But did he have to? Did he have to, Counsel? He didn't have to. Okay. No, did he have to? I'm asking you the question. Under our law, what did the district court have to do? I think he had to. For an abuse of discretion, this appellate court is going to be out of business if you don't have to give a reason. But doesn't . . . And that can't be an abuse of discretion. That can't be an abuse of discretion because he didn't give a reason. Counsel, didn't our case law say that a district court doesn't have to . . . Doesn't our case law say that? Case law says that and the case law also says you have to take this ultimate sanction. These people have one case. Yeah, he's got thousands of cases. He signed up to be an MDL judge. He handled them beautifully. But these eight people, they're thrown out of court forever with no reason after spending ten years responding . . . But Counsel, the fact . . . own time to every PTO they responded, own time, were found to be compliant, and then this one time, without explanation, their cases are thrown out, they're gone forever. That's just not proper. That's not following the law of the Fifth Circuit. Okay. I think we have your argument and we appreciate both sides' arguments. The case . . . I appreciate your time. Thank you. And that concludes today's oral arguments and this week's oral arguments for this panel. So we will adjourn. Thank you. Thank you. Thank you.